Barriault v. Batesville Casket Co.    CV-97-285-SD   05/12/98

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Matthew Barriault

    v.                              Civil No. 97-285-SD

Batesville Casket Company, Inc.


O R D E R

    In this action pursuant to the Family and Medical Leave Act
of 1993, 29 U.S.C. § 2617(a) (FMLA), plaintiff Matthew Barriault
alleges that defendant Batesville Casket Company (Batesville)
terminated his employment in violation of the FMLA.  Currently
before the court is Batesville's motion for judgment on the
pleadings based on the theory that the collective bargaining
agreement between Batesville and the plaintiff's union mandates
arbitration as plaintiff's only avenue of redress.


Background

    Barriault worked at Batesville for ten years until he was
fired in February of 1997.  Barriault alleges that he was fired
for absenteeism necessitated by his chronic asthma.  Batesville
uses a point system for absences under which an employee is
terminated when he or she accumulates sixty points.  Barriault
alleges that many of his points were accumulated as a result of
medically excusable absences.

Barriault was represented by a union, which had a collective bargaining agreement with Batesville.[1]  The collective bargaining agreement provided that the company's leave policy "shall be applied consistent with the requirements of the Family and Medical Leave Act ("FMLA")."  CBA, Art. IX at F.1.  The collective bargaining agreement also provided a grievance procedure[2] and declared that "the procedure for the resolution of a grievance set forth in this Article is exclusive."  Id., Art. VII at I.  Grievances subject to this requirement included any "claim by an employee . . . that the Company has violated the aggrieved employee's rights under an express provision of this Agreement."  Id., Art. VII.  At each stage of the grievance procedure through arbitration, the union had "final authority to dispose of any grievance in any step of the grievance procedure in any manner deemed by it to be most prudent, including refusal to process the grievance further, and the Company may conclusively rely on any such disposition."  Id., Art. VII at J.

_____

[1]A copy of the Collective Bargaining Agreement (CBA) is attached to Plaintiff's Objection to Defendant's Motion for Judgment on the Pleadings (document 12) as Exhibit F, and to Defendant's Memorandum in Support of Defendant's Motion for Judgment on the Pleadings (document 8) as Exhibit A.

[2]The record does not reveal whether Barriault utilized the grievance procedure.

## Discussion

### 1. Standard for Judgment on the Pleadings

The standard for judgment on the pleadings is essentially the same as the standard for evaluating a Rule 12(b)(6) motion. See Massachusetts Candy & Tobacco Distribs., Inc. v. Golden Distribs., Ltd., 852 F. Supp. 63, 67 (D. Mass. 1994). Both motions require that all material allegations in the complaint be construed in the light most favorable to the plaintiff . Gaskell v. Harvard Coop. Soc'y, 3 F.3d 495, 497 (1st Cir. 1993). The court may properly grant a motion for judgment on the pleadings "'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'" Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992) (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

### 2. Affect of Mandatory Arbitration Clauses on Statutory Claim

Although, as Batesville points out, only one reported case has addressed the question of whether the avenue of redress for an employee's FMLA claim can be limited to the grievance procedures provided by a collective bargaining agreement, there is considerable caselaw examining clauses mandating arbitration of

statutory claims in the employment context.[3]  Beginning with
Alexander v. Gardner-Denver in 1974, the United States Supreme
Court decided a line of cases holding that mandatory arbitration
clauses in collective bargaining agreements did not preclude
union members from seeking redress of statutory claims in federal
court.  See Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974);
Barrentine v. Arkansas-Best Freight System, Inc, 450 U.S. 728
(1981); McDonald v. West Branch, 466 U.S. 284 (1984).  More
recently, however, the Supreme Court held that an employee's
statutory age discrimination claim could be subjected to manda-
tory arbitration.  See Gilmer v. Interstate/Johnson Lane Corp.,
500 U.S. 20, 26-27 (1991).  Thus, assaying the current state of
the law necessitates reconciling these cases.

In Gardner-Denver, a black plaintiff alleged that his
employer discriminated against him on the basis of race in
violation of Title VII.  See Gardner-Denver, supra, 415 U.S. at
38.  Before filing suit in federal court, Alexander pursued his
claim through the multi-step grievance procedure provided by a

---

[3]The court finds defendant's dogged reliance on Smith v. CPC
Foodservice, 955 F. Supp. 84 (N.D. Ill. 1997) curious.  While it
is true that Smith is "almost factually identical to the case at
hand," this court is clearly not bound by the decision of another
district.  Although the case certainly may be persuasive
authority, it is incumbent upon the party seeking to use it as
such to convince the court that the case represents a correct
interpretation of the law.  Defendant's complete avoidance of
controlling authority is puzzling.

collective bargaining agreement that prohibited discrimination on the basis of race. After a hearing, an arbitrator ruled that Alexander had been discharged for just cause. See id. at 42. According to the collective bargaining agreement, this decision "was to be 'final and binding upon the Company, the Union, and any employee or employees involved.'" Id. The Supreme Court, however, held that this clause could not preclude the plaintiff from suing his employer under Title VII. See id. at 59-60. In support of its ruling, the Court emphasized the importance of judicial enforcement of Title VII, and questioned the capacity of arbitrators to enforce individual statutory rights. See id. at 45, 53. The Court also emphasized that the separate nature of the plaintiff's contractual and statutory rights allowed them to be enforced in different fora. See id. at 50 ("The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated . . . ."). "[T]he union's exclusive control over the manner and extent to which an individual grievance is presented" also concerned the Court. Id.

Although Gardner-Denver could be read broadly to stand for the proposition that employees cannot waive their rights to litigate statutory claims, the Court's decision in Gilmer limited Gardner-Denver's holding. Gilmer was required as a condition of

5

his employment to register as a securities representative with several stock exchanges. See Gilmer, supra, 500 U.S. at 23. One of the terms of registration provided that he agreed to arbitrate any dispute between himself and his employer arising out of his employment or the termination of his employment. See id. The Court held that Gilmer's agreement to arbitrate was enforceable, and would preclude him from pursuing his statutory age discrimination claim. See id. at 35. In general, the Court felt that "having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies . . . ." Id. at 26. The Gilmer Court explicitly retreated from Gardner-Denver's mistrust of arbitration. "'[W]e are past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution.'" Id. at 34 n.5 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-27 (1985)). The Court, however, reaffirmed Gardner-Denver's central holding, distinguishing that line of cases as follows:

> [the Alexander-Denver line of] cases did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims. Since the employees there had not agreed

6

> to arbitrate their statutory claims, and the labor
> arbitrators were not authorized to resolve such
> claims, the arbitration in those cases understand-
> ably was held not to preclude subsequent statutory
> actions. Second, because the arbitration in those
> cases occurred in the context of a collective-
> bargaining agreement, the claimants there were
> represented by their unions in the arbitration
> proceedings. An important concern therefore was
> the tension between collective representation and
> individual statutory rights, a concern not appli-
> cable to the present case. Finally, those cases
> were not decided under the FAA [Federal Arbitra-
> tion Act], which . . . reflects a "liberal federal
> policy favoring arbitration agreements."

Id. at 35.

Thus the court must examine these three distinguishing factors to determine to which precedent this case is more analogous. The first question is whether the collective bargaining agreement provided for arbitration of statutory claims. Gardner-Denver clearly stands for the proposition that an agreement to arbitrate contractual claims does not also obligate the parties to arbitrate statutory claims. See Gardner-Denver, supra, 415 U.S. at 50. In Gardner-Denver, the court emphasized, "In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under [a statute], an employee asserts independent statutory rights accorded by Congress." Id. at 49-50. In this case, like in Gardner-Denver, the plaintiff agreed to arbitrate

7

all disputes arising from the collective bargaining agreement.[4]
Thus Batesville's argument that the agreement covers statutory
claims depends on the assumption that the statutory claims have
been subsumed by the collective bargaining agreement. The court,
however, sees no reason to distinguish this case from Gardner-
Denver, which held that coterminous contractual rights replicated
rather than replaced statutory rights. See id. ("[A] contractual
right to submit a claim to arbitration is not displaced simply
because Congress also has provided a statutory right . . . .
Both rights have legally independent origins and are equally
available to the aggrieved employee."). Although several courts
considering similar agreements have concluded that such agree-
ments mandate arbitration of statutory claims, this court
respectfully disagrees. See, e.g., Austin v. Owens-Brockway
Glass Container, Inc., 78 F.3d 875, 880 (4th Cir.), cert. denied,
117 S. Ct. 432 (1996); Smith v. CPC Foodservice, 955 F. Supp. 84,
86 (N.D. Ill. 1997). Holding that a contractual agreement that
duplicates a preexisting statutory obligation can supplant the
statutory right is inconsistent with Gardner-Denver.[5]

---

[4]The difference between the instant agreement and the one
involved in Gardner-Denver is that this agreement specifically
referred to the relevant statute, whereas Gardner-Denver's
prohibited the conducted prohibited by Title VII, but did not
refer to the statute.

[5]The court finds Batesville's statement that "The CBA
expressly grants right under the FMLA to the plaintiff" incongru-

On the second factor that distinguished <u>Gilmer</u> from <u>Gardner-</u><u>Denver</u>, this case is more like <u>Gardner-Denver</u> because the arbitration agreement is contained in a collective bargaining agreement, as opposed to an individual agreement. Thus "the tension between collective representation and individual statutory rights" is present in this case. <u>Gilmer</u>, <u>supra</u>, 500 U.S. at 35. Although an alleged violation of the FMLA may not raise the same concerns as an allegation of racial discrimination, the Court has recognized that the tension between individual and collective rights is present even in cases that do not involve minority groups. <u>See</u> <u>Barrentine</u>, <u>supra</u>, 450 U.S. at 738. In <u>Barrentine</u>, the Court allowed an employee to litigate a claim under the Fair Labor Standards Act, despite the fact that his collective bargaining agreement provided for mandatory arbitration. The Court felt that the union's duty to increase benefits for workers as a whole could conflict with its role as a safeguard of individual rights. <u>See</u> <u>id.</u> at 742. In this case, as in

---

ous. Memorandum in Support of Defendant's Motion for Judgment on the Pleadings at 3. The rights of the FMLA clearly were granted by Congress. Batesville was not in the position to grant or deny such rights. <u>See</u> 29 U.S.C. § 2652(b) ("The rights established for employees under this Act or any amendment made by this Act shall not be diminished by any collective bargaining agreement or any employment benefit program or plan."). <u>Cf.</u> <u>Barrentine</u>, <u>supra</u>, 450 U.S. at 740 (stating that rights under Fair Labor Standards Act cannot be waived or abridged). Since the collective bargaining agreement could not "grant" employees rights under the FMLA, it would be more reasonable to interpret the provision as a limitation on Batesville's duties.

Barrentine, the grievance procedure gives the union complete control over the employee's claim. See CBA Article VII ("The union shall have final authority to dispose of any grievance in any step of the grievance procedure in any manner deemed by it to be most prudent, including refusal to process the grievance further"). Thus, concern for individual rights counsels in favor of allowing Barriault to litigate his FMLA claim.

Having found that the first two factors make this case more similar to Gardner-Denver than Gilmer, the court must now turn to the Federal Arbitration Act (FAA). The FAA was enacted to reverse judicial hostility to arbitration agreements, and thereby put them on the same footing as other contracts. The Act, however, is not applicable to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Although courts have differed over the scope of this exception, the parties in this case appear to have assumed that the collective bargaining agreement falls within the exception. See, e.g., Harrison v. Eddy Potash, Inc., 112 F.3d 1437, 1454 (10th Cir. 1997) (holding FAA generally inapplicable to collective bargaining agreements), petition for cert. filed, 66 USWL 3137 (Aug. 6 1996); Pryner v. Tractor Supply Co., 109 F.3d 354, 357 (7th Cir.) (limiting exception to workers engaged in physical movement of goods in commerce), cert. denied, 118 S. Ct. 295 (1997). Neither of the

parties in this case has addressed the FAA at all. Notably, the defendant has not evoked sections three and four of the FAA, which give the court power to stay proceedings that are the subject of an arbitration agreement and to compel arbitration. See 9 U.S.C. §§ 3, 4. Due to the parties' failure to address the FAA, the court is not prepared to decide this issue. Given the court's findings above, however, the court finds that precluding litigation of this case is inappropriate, regardless of whether the case is governed by the FAA. Although the FAA evinces a "liberal federal policy favoring arbitration agreements," Mitsubishi, supra, 473 U.S. at 625, this policy does not go so far as to require the court to enforce an ambiguous arbitration agreement that transfers control over an individual's statutory rights to his union.

Conclusion

For the abovementioned reasons, Defendant's Motion for Judgment on the Pleadings (document 8) is denied.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

May 12, 1998

cc:   James W. Donchess, Esq.
      Brian C. Goudas, Esq.
      Robert P. Joy, Esq.