OPINION
 

 Per Curiam:
 

 Before beginning her employment with A.G. Edwards & Sons (“Edwards”), petitioner Robin Kindred (“Kindred”) completed and signed two separate agreements. Both agreements contained an arbitration clause that required Kindred to arbitrate any disputes related to her employment. Kindred later filed a complaint in the district court. Edwards sought to compel arbitration, and the district court ruled that all of Kindred’s claims were subject to arbitration. For the reasons discussed herein, we conclude that Kindred appropriately seeks relief from this court by a writ of mandamus. Based on the two separate arbitration agreements, we further conclude that Kindred’s Title VII claim and her Family and Medical Leave Act claim are subject to arbitration. We therefore deny extraordinary relief.
 

 FACTS
 

 In October 1995, Edwards hired Kindred as an investment' broker. Kindred’s job responsibilities required that she register with the National Association of Securities Dealers, Inc.
 
 *408
 
 (“NASD”). Consequently, Kindred completed and signed a Uniform Application for Securities Industry Registration or Transfer Form (“U-4 Form”).
 

 The U-4 Form contains an arbitration provision. Specifically, the form states in paragraph five:
 

 I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.
 

 Item 10 identifies the NASD as one of the licensing organizations.
 

 Pursuant to paragraph five of the U-4 Form, Section 10101 of the NASD Code of Arbitration Procedure states, in relevant part:
 

 This Code of Arbitration Procedure is prescribed and adopted ... for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member.
 

 Edwards is a member of the NASD. Under Section 10201, any dispute involving a member or a person associated with a member against another member or a person associated with a member “shall be arbitrated under this Code.”
 

 In addition, Kindred completed and signed Edwards’ “Investment Broker Agreement.”
 
 [1]
 
 This second agreement also contains an arbitration clause. Paragraph twenty-six of that agreement states:
 

 You agree that any controversy or dispute arising between you and Edwards in any respect to this agreement or your employment by Edwards shall be submitted for arbitration before the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc.
 

 On November 6, 1998, Kindred filed a complaint in the district court alleging numerous claims, including sexual harassment and/or discrimination under Title VII
 
 [2]
 
 and its Nevada equivalent, and a breach of the Family and Medical Leave Act (“FMLA”). Edwards subsequently informed Kindred that her claims were sub
 
 *409
 
 ject to arbitration and that Edwards elected to pursue arbitration before the NASD. Nevertheless, Kindred refused to submit to arbitration.
 

 Accordingly, Edwards filed a motion to compel arbitration in the district court. On March 4, 1999, the district court ruled that all of Kindred’s claims were subject to arbitration before the NASD under both Nevada and relevant United States Supreme Court case law. Kindred has now filed a petition for a writ of mandamus or prohibition, challenging the district court order compelling arbitration.
 

 DISCUSSION
 

 As a threshold issue, we must first consider whether a writ of mandamus or prohibition is the proper method to challenge an order compelling arbitration.
 

 The Uniform Arbitration Act (“UAA”) governs arbitration agreements in Nevada.
 
 See
 
 NRS 38.015-38.205. In particular, NRS 38.205 specifies the types of orders relating to arbitration from which an appeal may be taken. ‘ ‘An order compelling arbitration is not listed [in NRS 38.205] as being subject to appeal, and is therefore not appealable.’ ’ Clark County v. Empire Electric, Inc., 96 Nev. 18, 19, 604 P.2d 352, 353 (1980);
 
 see also
 
 NRS 38.205. We may issue a writ of mandamus “where there is not a plain, speedy and adequate remedy in the ordinary course of law.” NRS 34.170. Under these circumstances, we conclude that Kindred has no remedy available other than that provided by a writ.
 
 See
 
 NRS 38.205;
 
 Empire Electric,
 
 96 Nev. at 19, 604 P.2d at 353. Moreover, other states recognize that a writ of mandamus is the proper method to challenge an order compelling arbitration.
 
 See
 
 Ex Parte Alexander, 558 So. 2d 364 (Ala. 1990); Banner Entertainment, Inc. v. Superior Court, 72 Cal. Rptr. 2d 598 (Ct. App. 1998); Bertero v. Superior Court, 30 Cal. Rptr. 719 (Ct. App. 1963). Accordingly, we conclude that Kindred appropriately seeks extraordinary relief by way of a writ of mandamus in this case.
 
 [3]
 

 
 *410
 
 Kindred argues that her Title VII and FMLA claims are not arbitrable. Although Kindred concedes that her other claims are subject to binding arbitration, she nonetheless seeks to sever her Title VII and FMLA claims from arbitration. We conclude that Kindred’s argument is without merit.
 

 A writ of mandamus is available to compel the performance of an act which the law requires as a duty resulting from an office, trust, or station, or to control an arbitrary or capricious exercise of discretion.
 
 See
 
 NRS 34.160; Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 637 P.2d 534 (1981). Mandamus is an extraordinary remedy, and it is within the discretion of this court to determine if a petition will be considered.
 
 See
 
 State ex rel. Dep’t Transp. v. Thompson, 99 Nev. 358, 360, 662 P.2d 1338, 1339 (1983);
 
 see also
 
 Poulos v. District Court, 98 Nev. 453, 455, 652 P.2d 1177, 1178 (1982).
 

 Moreover, in reviewing arbitration agreements, the issue of “[wjhether a dispute is arbitrable is essentially a question of construction of a contract.” Clark Co. Public Employees v. Pearson, 106 Nev. 587, 590, 798 P.2d 136, 137 (1990). As such, “the reviewing court is obligated to make its own independent determination on this issue, and should not defer to the district court’s determination.”
 
 Id.
 

 In determining whether to compel arbitration of federal statutory claims, we examine: (1) whether the parties have made an agreement to arbitrate; (2) the scope of the agreement; and (3) whether the federal statutory claims are arbitrable.
 
 See
 
 Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-27 (1984);
 
 see also
 
 Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 844 (2d Cir. 1987).
 

 First, it is undisputed that Kindred completed and signed two separate arbitration agreements. Nonetheless, Kindred asserts that
 
 *411
 
 the arbitration clause in the U-4 Form is invalid as an adhesion contract. Without citing to any evidence, Kindred asserts that the failure to sign the agreement would have barred her employment with Edwards and that she did not understand the implications of the arbitration clause.
 

 An adhesion contract is “a standardized contract form offered to consumers of goods and services essentially on a ‘take it or leave it’ basis, without affording the consumer a realistic opportunity to bargain.” Obstetrics and Gynecologists v. Pepper, 101 Nev. 105, 107, 693 P.2d 1259, 1260 (1985). We have never applied the adhesion contract doctrine to employment cases. Moreover, we have held that “[p]arties to a written arbitration agreement are bound by its conditions regardless of their subjective beliefs at the time the agreement was executed.” Campanelli v. Conservas Altamira, S.A., 86 Nev. 838, 841, 477 P.2d 870, 872 (1970). For these reasons, we conclude that Kindred’s argument is meritless and that she entered into two valid arbitration agreements.
 

 Second, in judging the scope of the arbitration agreements, we “resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration.” Int’l Assoc. Firefighters v. City of Las Vegas, 104 Nev. 615, 618, 764 P.2d 478, 480 (1988). In fact, we have observed that the purpose of the UAA “is to prevent courts from intervening when a provision for arbitration has been contractually provided by the parties.” Phillips v. Parker, 106 Nev. 415, 417, 794 P.2d 716, 718 (1990). Therefore, we are hesitant “to deprive the parties of the benefits of arbitration they have bargained for, and arbitration clauses are to be construed liberally in favor of arbitration.’ ’
 
 Id.
 

 In the present matter, the plain language of both arbitration provisions is very broad. The U-4 Form states that “any dispute, claim or controversy that may arise between me and my firm” must be arbitrated. The second arbitration agreement provides that “any controversy or dispute arising between you and Edwards in any respect to this agreement or your employment by Edwards shall be submitted for arbitration.” Because of the broad language of both arbitration clauses and the fact that Nevada overwhelmingly favors arbitration, we conclude that the scope of the arbitration agreements appears to include all employment related claims.
 

 However, the crux of Kindred’s argument focuses on the third element of whether her Title VII and FMLA claims are subject to
 
 *412
 
 arbitration. The resolution of this issue requires a separate and closer examination of applicable federal case law.
 

 In several cases, the United States Supreme Court has addressed the conflict between arbitration agreements and federal statutory rights. In Alexander v. Gardner-Denver Co., 415 U.S. 36, 59-60 (1974), the Court held that an arbitration agreement under a collective bargaining agreement does not preclude separate litigation of a Title VII claim. However, in Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 35 (1991), the Court distinguished
 
 Gardner-Denver
 
 by holding that claims under the Age Discrimination in Employment Act of 1967 (“ADEA”) can be subject to
 
 individual
 
 agreements to arbitrate.
 
 [4]
 
 Importantly, the ADEA and Title VII are both federal anti-discrimination statutes. In fact,
 
 Gilmer
 
 involved the same type of U-4 Form at issue in the instant case. In addition, the Court ruled that “ ‘[hjaving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.’ ”
 
 See Gilmer,
 
 500 U.S. at 26 (quoting
 
 Mitsubishi Motors Corp.,
 
 473 U.S. at 628). In making this determination, the Court looked to the language of the statute, its legislative history, and whether a conflict between the statute’s goals and arbitration existed.
 
 See id.
 

 After a careful review of Title VII, we conclude that the language of Title VIE does not expressly preclude arbitration.
 
 See
 
 Austin v. Owen-Broclcway Glass Container, Inc., 78 F.3d 875, 881 (4th Cir. 1996) (holding that the plain language of Title VII means “Congress is in favor of arbitration”). In fact, the plain language of Title VII evinces approval of arbitration as a means to resolve Title VII claims. The Civil Rights Act of 1991
 
 [5]
 
 provides:
 

 Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including .. . arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title.
 

 
 *413
 
 Civil Rights Act of 1991, Pub. L. No. 102-166, § 118, 105 Stat. 1071, 1081 (1991). In addition, we note that the legislative history of Title VII is ambiguous regarding Congress’ position on arbitration because it contains statements supporting the arbitration of Title VII claims and statements criticizing it.
 
 See, e.g.,
 
 137 Cong. Rec. S15,472-501, S15,478 (daily ed. Oct. 30, 1991) (statement of Sen. Dole); H.R. Rep. No. 101-485(III), at 76-77 (1990),
 
 reprinted in
 
 1990 U.S.C.C.A.N. 445, 499-500. Due to the ambiguous nature of Congress’ position, we conclude that the legislative history of Title VII is “insufficient to overcome the presumption in favor of arbitration which
 
 Gilmer
 
 establishes.” Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, 170 F.3d 1, 10 (1st Cir. 1999). Moreover, we further conclude that Title VH’s goals are not undermined by arbitration because an individual may still vindicate his or her rights, under Title VII in arbitration proceedings.
 
 See id.
 
 at 11.
 

 Furthermore, eleven of the twelve federal circuit courts of appeals have addressed the issue of whether Title VII claims are arbitrable. Ten of those eleven federal circuit courts of appeals hold that Title VII claims are subject to arbitration.
 
 [6]
 
 ' Only the Ninth Circuit has arrived at the opposite conclusion.
 
 See
 
 Duffield v. Robertson Stephens & Co., 144 F.3d 1182 (9th Cir. 1998),
 
 cert. denied,
 
 119 S. Ct. 445 (1998).
 

 In
 
 Duffield,
 
 the Ninth Circuit held that an arbitration provision in a U-4 Form was unenforceable. The Ninth Circuit ruled that the text of Title VII and its legislative history showed “that Congress intended to preclude compulsory arbitration of Title VII claims.”
 
 Duffield,
 
 144 F.3d at 1199. However, we conclude that
 
 Duffield
 
 is distinguishable from the instant matter. Here, Kindred signed a
 
 second
 
 arbitration agreement in addition to the arbitration provision in the U-4 Form. The language in the second arbitration agreement is even broader than the language in the U-4 Form. Moreover, the Ninth Circuit’s interpretation of Title VII
 
 *414
 
 conflicts with the interpretation of ten other federal circuit courts of appeals. “Where the federal circuits are in conflict, the authority of the Ninth Circuit ... is entitled to no greater weight than decisions of other circuits.” Elliot v. Albright, 257 Cal. Rptr. 762, 765 (Ct. App. 1989). For the foregoing reasons, we conclude, as did nearly all the federal circuit courts of appeals, that Congress has not expressly precluded Title VII claims from being subject to arbitration. Accordingly, we conclude that Kindred’s Title VII claim is arbitrable.
 

 Similarly, several courts have held that FMLA claims are subject to arbitration.
 
 See, e.g.,
 
 O’Neil v. Hilton Head Hosp., 115 F.3d 272, 274 (4th Cir. 1997); Smith v. CPC Foodservice, 955 F. Supp. 84, 86 (N.D. Ill. 1997); Reese v. Commercial Credit Corp., 955 F. Supp. 567, 570 (D. S.C. 1997). Moreover, Satarino v. A.G. Edwards & Sons, Inc., 941 F. Supp. 609 (N.D. Tex. 1996), is remarkably similar to the instant case. In
 
 Satarino,
 
 the plaintiff signed both the U-4 Form
 
 and
 
 the “Investment Broker Agreement.” The
 
 Satarino
 
 court concluded that the arbitration provisions in both agreements were sufficiently broad to include an FMLA claim.
 
 See id.
 
 at 613. In addition, the court utilized the
 
 Gilmer
 
 analysis of examining the text of the FMLA and its legislative history, while also examining whether the FMLA’s goals are compatible with arbitration. Ultimately, the court held that the FMLA “contains nothing to suggest that agreements to arbitrate are unenforceable . . . [a]nd Satarino has not pointed the court to legislative history to support such a conclusion, or to an inherent conflict between the FMLA and arbitration.’ ’
 
 Id.
 

 We conclude that the
 
 Satarino
 
 court’s analysis is persuasive, especially in light of the fact that Congress could have precluded FMLA claims from being subject to arbitration. Because Congress enacted the FMLA well after
 
 Gilmer
 
 in 1993, Congress had the opportunity to preclude the arbitrability of FMLA claims, but did not do so.
 
 See
 
 29 U.S.C. § 2601 (1999);
 
 Smith,
 
 955 F. Supp. at 86. For these reasons, we conclude, as did the
 
 Satarino
 
 court, that Congress has not precluded FMLA claims from being subject to arbitration. Accordingly, we conclude that Kindred’s FMLA claim is also arbitrable.
 

 Finally, it is important to note that “[b]y agreeing to arbitrate a statutory claim [such as a Title VII or FMLA claim], a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.” Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1984). Thus, Kindred still retains the opportunity to present her Title VII and FMLA claims to an arbitrator, just not to a jury.
 

 
 *415
 
 Accordingly, we conclude that extraordinary relief is not warranted in this case because the district court did not abuse its discretion in concluding that both Kindred’s Title VII and FMLA claims are arbitrable. We therefore deny Kindred’s petition for a writ of mandamus or prohibition.
 
 [7]
 

 [1]
 

 Kindred failed to disclose the existence of this second agreement and did not discuss its relevance to the issues involved in her petition.
 

 [2]
 

 Portions of the Civil Rights Act of 1964 are commonly referred to as Title VII.
 
 See
 
 42 U.S.C. §§ 2000e to 2000e-17 (1994).
 

 [3]
 

 Alternatively, Kindred seeks a writ of prohibition. A writ of prohibition may be issued when the district court acts in excess of its jurisdiction.
 
 See
 
 NRS 34.320. Kindred never discusses the applicability of a writ of prohibition in this case, but apparently argues that the district court exceeded its jurisdiction by ruling on the arbitrability of her Title VII and FMLA claims. However, NRS 613.330(1) is Nevada’s equivalent to Title VII and is almost identical to section 2000e-2(a)(1) of Title VII.
 
 See
 
 42 U.S.C. § 2000e-2(a)(l) (1994). Furthermore, because state anti-discrimination statutes are a part of Title VH’s enforcement scheme, claims under NRS 613.330(1) are arbitrable to the same extent as Title VII claims.
 
 See
 
 Kremer v. Chemical Construction
 
 *410
 
 Corp., 456 U.S. 461, 477 (1982). Conversely, Nevada does not have an equivalent to the FMLA. Yet, the FMLA provides that “[a]n action to recover the damages or equitable relief prescribed in paragraph (1) may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction.”
 
 See
 
 29 U.S.C. § 2617(a)(2) (1999). Accordingly, we conclude that the district court acted within its jurisdiction when it heard Edwards’ motion to compel arbitration. Therefore, a writ of prohibition is inapplicable in this case.
 

 [4]
 

 Recently, in Wright v. Universal Maritime Service Corp., 525 U.S. 70 (1998), the Court held that a general arbitration clause in a collective bargaining agreement did not require arbitration of an alleged violation of the Americans with Disabilities Act. However, the Court distinguished
 
 Gilmer
 
 by noting that
 
 “Gilmer
 
 involved an individual’s waiver of his own rights, rather than a union’s waiver of the rights of represented employees.”
 
 See Wright,
 
 525 U.S. at 80-81. Additionally, the Court stated, “We take no position, however, on the effect of this provision in cases where a [collective bargaining agreement] clearly encompasses employment discrimination claims, or
 
 in areas outside collective bargaining.” Id.
 
 at 82 n.2 (emphasis added). Accordingly, we conclude that
 
 Wright
 
 is inapposite to this case.
 

 [5]
 

 The Civil Rights Act of 1991 amended Title VII, in part.
 
 See
 
 Pub. L. No. 102-166, 105 Stat. 1071 (1991).
 

 [6]
 

 See Rosenberg,
 
 170 F.3d at 1; Koveleskie v. SBC Capital Markets, Inc., 167 F.3d 361 (7th Cir. 1999),
 
 cert. denied,
 
 120 S. Ct. 44 (1999); Seus v. John Nuveen & Co., Inc., 146 F.3d 175 (3d Cir. 1998),
 
 cert. denied,
 
 119 S. Ct. 1028 (1999); Paladino v. Avnet Computer Technologies, Inc., 134 F.3d 1054 (11th Cir. 1998); Patterson v. Tenet Healthcare, Inc., 113 F.3d 832 (8th Cir. 1997); Cole v. Bums Intern. Security Services, 105 F.3d 1465 (D.C. Cir. 1997);
 
 Austin,
 
 78 F.3d at 875; Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482 (10th Cir. 1994); Willis v. Dean Witter Reynolds, Inc., 948 F.2d 305 (6th Cir. 1991); Alford v. Dean Witter Reynolds, Inc., 939 F.2d 229 (5th Cir. 1991). Though the Second Circuit has yet to address the issue, all the federal district courts in the Second Circuit are unanimous in holding that Title VII claims are arbitrable.
 
 See, e.g.,
 
 Pitter v. Prudential Life Ins. Co. of America, 906 F. Supp. 130, 139 (E.D.N.Y. 1995).
 

 [7]
 

 We hereby vacate our order of February 16, 2000, staying the arbitration proceedings in this matter.