**131 Nev., Advance Opinion 71**

## IN THE SUPREME COURT OF THE STATE OF NEVADA

DENNIS TALLMAN, INDIVIDUALLY
AND ON BEHALF OF OTHERS
SIMILARLY SITUATED,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
SUSAN JOHNSON, DISTRICT JUDGE,
Respondents,
and
CPS SECURITY (USA), INC.; AND CPS
CONSTRUCTION SECURITY PLUS,
INC.,
Real Parties in Interest.

No. 60673

FILED

SEP 24 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

DONALD MIKA; AND BERYL HARTER,
INDIVIDUALLY AND ON BEHALF OF
OTHERS SIMILARLY SITUATED,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
SUSAN JOHNSON, DISTRICT JUDGE,
Respondents,
and
CPS SECURITY (USA), INC.; AND CPS
CONSTRUCTION SECURITY PLUS,
INC.,
Real Parties in Interest.

No. 61390

Original petitions for writ of mandamus challenging district court orders compelling arbitration in an employment action.

*Petitions denied.*

15-28854

Leon Greenberg Professional Corporation and Leon M. Greenberg, Las Vegas,
for Petitioners.

Kamer Zucker Abbott and Carol Davis Zucker and Timothy W. Roehrs, Las Vegas,
for Real Parties in Interest.

---

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, PICKERING, J.:

Petitioners Donald Mika, Beryl Harter, and Dennis Tallman seek writs of mandamus directing the district court to vacate its orders compelling arbitration of their claims against their former employer, real party in interest CPS Security (USA), Inc., and certain of its agents and associates (collectively, CPS). All three petitioners signed the same long-form arbitration agreement, which includes a clause waiving the right to initiate or participate in class actions. They urge this court to invalidate the agreement, first, because it was not countersigned by CPS and, second, because its class action waiver assertedly violates state and federal law. Petitioner Tallman also maintains that CPS waived its right to compel arbitration by litigating with him in state and federal court. The district court acted properly in compelling individual arbitration of petitioners' claims. We therefore deny writ relief.

I.

A.

CPS provides security services to construction companies in Nevada and elsewhere. Petitioners worked 50 to 70 hours per week for

CPS as trailer guards. As a condition of their employment, CPS required petitioners to sleep overnight in small trailers located at its work sites. CPS did not pay petitioners for their sleep time except when they were called out to respond to an alarm or other activity at the site. Petitioners allege, and CPS denies, that they are owed at least the minimum wage for the required on-site sleep time, whether called out during the night or not, as well as overtime pay.

Petitioners signed both short- and long-form arbitration agreements with CPS. The short-form agreement is entitled "Arbitration Agreement (Outside CA)" and includes concise language assenting to binding arbitration and providing that it can only be modified "by a written instrument executed by EMPLOYEE and Chris Coffey, on behalf of the COMPANY." The long-form agreement is entitled "Offer to Participate in Arbitration of Disputes" and is much more detailed. It specifies that arbitration shall be conducted pursuant to the JAMS Employment Arbitration Rules at a location convenient to the employee and provides for a written award, judicial review of the award, and for CPS to bear the costs of arbitration, including the arbitrators' fees.

The long-form arbitration agreement includes a clause entitled "Waiver of Right to Initiate or Participate in Collective or Class Actions." This clause states that, "The Arbitrator shall not consolidate Claims of different employees into one proceeding, nor shall the Arbitrator have the power to hear arbitration as a class action." It continues:

> By entering into this Agreement, the Company [(CPS)] and I are agreeing to waive rights we might otherwise have including, but not limited to, the rights (a) to initiate representative actions, collective actions, and/or class actions; and

(b) to participate in representative actions, collective actions, or class actions initiated by others.

The long-form agreement also includes an acknowledgment that CPS "is engaged in transactions involving interstate commerce[ and] that the employment relationship between us affects interstate commerce."

The long-form agreement has two signature pages. Each of the petitioners signed both pages of his or her long-form agreement. The first signature page of the long-form agreement also includes a signature line for CPS, which CPS left blank and never signed. The second and final signature page is set up for only the employee to sign. It contains three paragraphs, all in capital letters, headed "VOLUNTARY AGREEMENT," "RIGHT TO CONSULT COUNSEL," and "30 DAY PERIOD TO OPT-OUT." The paragraph headed "OPT-OUT" acknowledges "THAT I WAS ADVISED THAT CHOOSING TO SIGN THIS AGREEMENT IS NOT A CONDITION OF MY EMPLOYMENT," and that "I HAVE BEEN GIVEN A COPY OF MY SIGNED AGREEMENT AND HAVE A FULL THIRTY (30) DAY PERIOD TO OPT-OUT OF THE AGREEMENT IF I CHANGE MY MIND."

B.

Tallman sued CPS in state court, asserting minimum wage and overtime claims individually and on behalf of others similarly situated under Nevada law, NRS Chapter 608, and the federal Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219 (2014). CPS removed Tallman's complaint to federal court, which retained jurisdiction of the FLSA claims but declined to exercise supplemental jurisdiction over, and therefore remanded, the Nevada-law-based claims. Thereafter, Mika and Harter filed a second state court suit against CPS. Their complaint, also

styled as a class action, reasserts Tallman's NRS Chapter 608 claims against CPS but adds new defendants and civil racketeering claims under NRS Chapter 207. The two suits were assigned to the same district court judge who, after briefing and argument, entered orders compelling individual arbitration of Tallman's, Mika's, and Harter's claims and denying their motions for class certification. It is from these orders that Tallman, Mika, and Harter seek extraordinary writ relief.

## II.

Nevada has adopted the Uniform Arbitration Act of 2000 (UAA). NRS 38.206 to 38.248. Consistent with its policy favoring efficient and expeditious enforcement of agreements to arbitrate, *see* NRS 38.219; *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 553, 96 P.3d 1159, 1162 (2004), the Act authorizes interlocutory appeals from orders *denying* arbitration but makes no provision for interlocutory appeals of orders *compelling* arbitration. NRS 38.247(a)(1). We have said that the reason for not allowing interlocutory appeals of orders compelling arbitration is "obvious": "[I]f at the very threshold of the proceeding the defaulting party could appeal and thereby indefinitely delay the matter of arbitration, the object of the law [favoring arbitration] and the purpose of the written agreement of the parties would be entirely defeated." *Clark Cnty. v. Empire Elec., Inc.*, 96 Nev. 18, 20, 604 P.2d 352, 353 (1980) (internal quotations omitted) (addressing an earlier version of the UAA).

Since petitioners have no immediate right of direct appeal, they ask this court to exercise original mandamus jurisdiction over the district court's orders compelling arbitration. Mandamus affords interlocutory appellate review in cases "where there is not a plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170. The

petitioners assume, and CPS accepts, that they have no "plain, speedy and adequate remedy" besides mandamus because NRS 38.247(a)(1) does not provide for direct, interlocutory appeals from compelling arbitration. *See also Kindred v. Second Judicial Dist. Court*, 116 Nev. 405, 409, 996 P.2d 903, 906 (2000) (reviewing an order compelling arbitration on a writ of mandamus and "conclud[ing] that [petitioner] has no remedy available other than that provided by a writ"). But error in ordering arbitration may be reviewed on appeal from the final judgment or order confirming or vacating the award, *see* NRS 38.247; *Clark Cnty. v. Empire Elec., Inc.*, 96 Nev. at 20, 604 P.2d at 353, eventual appellate review that the Uniform Arbitration Act deems adequate and appropriate. *See In re Gulf Exploration, LLC*, 289 S.W.3d 836, 841-43 (Tex. 2009) (discussing the tension between mandamus review of orders compelling arbitration and "the legislative preference for moving cases to arbitration quickly" evident in the Uniform Arbitration Act's withholding a right of direct interlocutory appeal of such orders). Thus, the party seeking extraordinary writ relief from an order compelling arbitration still should show why an eventual appeal does not afford "a plain, speedy and adequate remedy in the ordinary course of law," NRS 34.170,[1] and that the matter meets the other

---

[1] We question *Kindred* to the extent it suggests that orders compelling arbitration automatically satisfy NRS 34.170's requirement that there not be "a plain, speedy and adequate remedy in the ordinary course of law." While the unavailability of an immediate appeal from an order compelling arbitration *may* present a situation in which an eventual appeal from the order confirming the award or other final judgment in the case will not be plain, speedy, or adequate, it is an overstatement to say this holds true in all cases where arbitration has been compelled. *See generally In re Gulf Exploration*, 289 S.W.3d at 841-42 (rejecting the argument that the lack of an immediate appeal from an order compelling

*continued on next page . . .*

criteria for extraordinary writ relief, i.e., that mandamus is needed "to compel the performance of an act that the law requires or to control a manifest abuse of discretion" by the district court. *State ex rel. Masto v. Second Judicial Dist. Court*, 125 Nev. 37, 43-44, 199 P.3d 828, 832 (2009) (also emphasizing that "the decision to entertain" a petition for mandamus challenging an order compelling arbitration is not automatic, but a matter "addressed solely to our discretion").

The parties do not meaningfully address the requirements for extraordinary writ relief in their briefs. We nonetheless accept mandamus review of the petitions before us for two reasons. First, our case law may have invited the parties to assume that the lack of a right of interlocutory direct appeal made mandamus readily available. *See supra* note 1; *Kindred*, 116 Nev. at 409, 996 P.2d at 906; *cf. Pan v. Eighth Judicial Dist. Court*, 120 Nev. 222, 228, 88 P.3d 840, 843-44 (2004) (although concluding that appeal, not mandamus, is the appropriate vehicle to review orders dismissing actions on forum non conveniens grounds, "because we previously indicated that the proper method of review in this type of case is a petition for a writ of mandamus, we will exercise our original jurisdiction and consider this petition"). Second, our decision to invalidate class action waivers in consumer arbitration agreements, *see Picardi v. Eighth Judicial Dist. Court*, 127 Nev. 106, 251 P.3d 723 (2011), conflicts with the Supreme Court's more recent decision in *AT&T Mobility LLC v.*

---

*. . . continued*

arbitration under the Texas version of the UAA could or should satisfy the requirement that the party seeking mandamus show no adequate remedy at law).

*Concepcion*, 563 U.S. \_\_\_, 131 S. Ct. 1740 (2011), and petitioners present a nonfrivolous argument that, notwithstanding *Concepcion*, the National Labor Relations Act, 29 U.S.C. §§ 157, 158 (2014), may invalidate class and collective action waivers in employment arbitration agreements. *But see D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 362 (5th Cir. 2013); *Iskanian v. CLS Transp. Los Angeles, LLC*, 327 P.3d 129, 141-42 (Cal. 2014), *cert. denied*, \_\_\_ U.S. \_\_\_, 135 S. Ct. 1155 (2015). The conflict between our decision in *Picardi* and the Supreme Court's decision in *Concepcion*, and the injury the petitioners and the class members they sought to represent would suffer if the district court's orders compelling individual arbitration proved wrong, together persuade us to consider the petitions on the merits.

### III.

Petitioners raise a threshold question whether the long-form arbitration agreement, which contains the objected-to class action waiver, constitutes a valid contract. They contend that CPS's failure to sign the long-form agreement makes it unenforceable and that the short-form agreement, which CPS did sign and which does not include a class action waiver clause, therefore controls. Petitioners Mika and Harter separately argue that the additional defendants they sued, certain individuals and entities associated with CPS, were not party to and cannot enforce either form of arbitration agreement.

NRS 38.219(1) expresses Nevada's fundamental policy favoring the enforceability of arbitration agreements. Similar to § 2 of the Federal Arbitration Act (FAA), 9 U.S.C. § 2 (2013), it provides that, "An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is

valid, enforceable and irrevocable except . . . upon a ground that exists at law or in equity for the revocation of a contract." "Whether a dispute arising under a contract is arbitrable is a matter of contract interpretation, which is a question of law that we review de novo." *State ex rel. Masto*, 125 Nev. at 44, 199 P.3d at 832. "As a matter of public policy, Nevada courts encourage arbitration and liberally construe arbitration clauses in favor of granting arbitration." *Id.*

Petitioners' argument that CPS's failure to sign the long-form arbitration agreement invalidates the agreement fails. While NRS 38.219(1) requires that the arbitration agreement be "contained in a record," it does not require that the written record of the agreement to arbitrate be signed. 1 Thomas H. Oehmke, *Commercial Arbitration* § 7:1, at 7-2 (3d ed. 2014) (noting that, while the UAA requires that "the terms of an arbitration agreement . . . be in a *record*," this only means that "the arbitration contract must be in writing[;] neither the FAA nor the UAA (2000) require that the arbitral contract be executed"); *see also Campanelli v. Conservas Altamira, S.A.*, 86 Nev. 838, 842, 477 P.2d 870, 872 (1970) ("Although an agreement to arbitrate future controversies must be in writing, a signature is not required." (internal citations omitted)).

Petitioners dated and signed the short- and long-form agreements together; that CPS did not pre-sign the latter makes sense given the 30-day opt-out period the long-form agreement extended the signing employee. We agree with the district court, which held that the petitioners accepted the "offer" that was the long-form agreement when they signed it and did not thereafter timely opt out. The clause in the fully executed short-form agreement stating that "This Agreement can be modified only by a written instrument executed by EMPLOYEE and Chris

)) 1947A

Coffey, on behalf of the COMPANY," does not alter the analysis. *Silver Dollar Club v. Cosgriff Neon Co., Inc.*, 80 Nev. 108, 111, 389 P.2d 923, 924 (1964) ("Even where they include in the written contract an express provision that it can only be modified or discharged by a subsequent agreement in writing, nevertheless their later oral agreement to modify or discharge their written contract is both provable and effective to do so." (quoting *Simpson on Contracts* § 63, at 228)); *see* UAA of 2000, § 6, cmt. 1, 7 U.L.A., part 1A 25 (2009) (noting that if an initial writing agreeing to arbitration exists, "a subsequent oral agreement about terms of an arbitration contract is valid"); *Patterson v. Raymours Furniture Co.*, ___ F. Supp.3d ___, 2015 WL 1433219 *3-4 (S.D.N.Y. 2015) (enforcing revisions to an arbitration agreement as acknowledged in an employee handbook and noting that, while the FAA requires a writing, it need not be signed).

Also unavailing is the argument by petitioners Mika and Harter that the additional defendants they sued did not sign and so cannot enforce the CPS arbitration agreements. By its terms, the long-form arbitration agreement covers claims not only against CPS but also "against its officers, directors, managers, employees or agents." "When the non-signatory party is an employee of the signatory corporation and the underlying action in the dispute was undertaken in the course of the employee's employment, there is a uniform federal rule, founded on general state law principles of agency: [if] 'a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements.'" 1 Thomas H. Oehmke, *supra*, 7:3, at 88 (2015 Supp.) (quoting *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121 (3d Cir. 1993)). The wrong that Mika and Harter allege they suffered ties directly

to CPS's trailer guard compensation and arbitration policies, which they allege the additional defendants, as CPS's "managers, officers, directors and/or controlling agents" and "agent or alter ego," devised and carried out. Given this record, the district court correctly treated Mika's and Harter's asserted claims against the additional defendants named in their complaint as covered by the long-form arbitration agreement they signed with CPS.

## IV.

### A.

This brings us to the crux of the matter. Petitioners assert statutory overtime and minimum wage claims under NRS Chapter 608. Prosecuted individually, these are relatively small-dollar claims. If the long-form arbitration agreement stands, petitioners must proceed individually, and not by class action. Petitioners opposed CPS's motions to compel arbitration with an affidavit from their counsel, which estimates the size of their potential recoveries and the likely expense involved and concludes that, if the class action waiver is enforced, pursuing petitioners' statutory claims is economically infeasible. Citing *Gentry v. Superior Court*, 165 P.3d 556, 567-68 (Cal. 2007) *abrogation recognized by Iskanian v. CLS Transp. Los Angeles, LLC*, 327 P.3d 129, 135-36 (Cal. 2014), petitioners urge us to invalidate the class action waiver in the long-form arbitration agreement on the grounds it violates substantive state law by depriving them of the means to vindicate their statutory overtime and minimum wage claims.

This court addressed the validity of a class action waiver in an arbitration agreement in *Picardi v. Eighth Judicial District Court*, 127 Nev. 106, 251 P.3d 723 (2011). In *Picardi*, "we consider[ed] whether an

(O) 1947A

arbitration agreement is unenforceable because it is unconscionable or contrary to public policy when it requires consumers to waive their rights to participate in any form of class action litigation to pursue common claims that they may have concerning a retail installment sales contract." 127 Nev. at 108, 251 P.3d at 724. Because "Nevada public policy favors allowing consumer class action proceedings when the class members present common legal or factual questions but their individual claims may be too small to be economically litigated on an individual basis," we held "that a clause in a contract that prohibits a consumer from pursuing claims through a class action, whether in court or through arbitration, violates Nevada public policy." *Id.* Of note, the arbitration agreement in *Picardi* specified that it "shall be governed by the Federal Arbitration Act." *Id.* at 111, 251 P.3d at 726. Nonetheless, we concluded that "the FAA does not require states to enforce arbitration agreements" that offend substantive state policy. *Id.* at 112, 251 P.3d at 726. Because "the class action waiver in the arbitration agreement violates [Nevada] public policy," we deemed it unenforceable. *Id.* at 114, 251 P.3d at 728.

The United States Supreme Court handed down its decision in *Concepcion* after we decided *Picardi*. At issue in *Concepcion* was whether the FAA preempted California's *Discover Bank* rule;[2] the Supreme Court held that it did. In *Discover Bank*, the California Supreme Court had held, much as we held in *Picardi*, that class arbitration waivers in the context of consumer contracts of adhesion are unconscionable and unenforceable when the amounts involved are too small to be challenged

---

[2]*Discover Bank v. Superior Ct.*, 113 P.3d 1100 (Cal. 2005).

individually, such that enforcing a class waiver allows the stronger party to escape liability. 113 P.3d at 1109. The high court in *Concepcion* invalidated the rule in *Discover Bank*. In its view, "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." 563 U.S. at ___, 131 S. Ct. at 1748. To require class arbitration, in the face of an agreement disallowing resort to class action procedures, "sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Id.* at ___, 131 S. Ct. at 1751. Thus, "because it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, California's *Discover Bank* rule is preempted by the FAA." *Id.* at ___, 131 S. Ct. at 1753 (internal quotation omitted).

Petitioners recognize that, although *Concepcion* does not mention *Picardi* by name, the high court's opinion abrogates *Picardi* as fully as it abrogates *Discover Bank*. Nonetheless, they urge us to distinguish *Concepcion* on two bases. First, they insist that *Concepcion* is limited to the consumer arbitration context and does not affect cases like the underlying cases and *Gentry*, 165 P.3d at 567-68, in which the California Supreme Court invalidated a class arbitration waiver on the grounds that it made effective vindication of an employee's small-dollar wage and overtime claims impossible. Second, they argue that *Concepcion* only applies to cases litigated in federal, not state court. Neither argument has merit.

The argument that *Gentry* survived *Concepcion* was considered and rejected by the California Supreme Court in *Iskanian v.*

*CLS Transportation Los Angeles, LLC*, 327 P.3d 129 (Cal. 2014). The plaintiff in *Iskanian* was an employee who sought "to bring a class action lawsuit on behalf of himself and similarly situated employees for his employer's alleged failure to compensate its employees for, among other things, overtime and meal and rest periods." 327 P.3d at 133. Like petitioners here, Iskanian "had entered into an arbitration agreement that waived the right to class proceedings." *Id.* He acknowledged that *Concepcion* abrogated *Discover Bank* but tried to distinguish *Gentry*, as follows: "Unlike *Discover Bank,* which held consumer class action bans generally unconscionable, *Gentry* held only that when a statutory right is unwaivable because of its public importance, banning class actions would in some circumstances lead to a de facto waiver and would impermissibly interfere with employees' ability to vindicate unwaivable rights and to enforce the overtime laws." *Id.* at 135 (internal quotations omitted).

The California Supreme Court was not persuaded. In its view, "the fact that *Gentry*'s rule against class waiver is stated more narrowly than *Discover Bank*'s rule does not save it from FAA preemption under *Concepcion.*" *Id.* at 135. On this basis, the California Supreme Court upheld the district court's order compelling individual arbitration of Iskanian's wage and hour claims and held that *Concepcion* effectively overruled *Gentry*, in addition to *Discover Bank*:

> The high court in *Concepcion* made clear that even if a state law rule against consumer class waivers were limited to "class proceedings [that] are necessary to prosecute small-dollar claims that might otherwise slip through the legal system," it would still be preempted because states cannot require a procedure that interferes with fundamental attributes of arbitration "even if it is desirable for unrelated reasons." It is thus

> incorrect to say that the infirmity of *Discover Bank* was that it did not require a case-specific showing that the class waiver was exculpatory. *Concepcion* holds that *even if* a class waiver is exculpatory in a particular case, it is nonetheless preempted by the FAA. Under the logic of *Concepcion*, the FAA preempts *Gentry*'s rule against employment class waivers.

*Id.* at 135-36 (alteration in original) (quoting *Concepcion*, 563 U.S. at __, 131 S. Ct. at 1753). We agree with the California Supreme Court that, while *Concepcion* specifically addressed class waivers in consumer arbitration agreements, nothing in *Concepcion* suggests that the FAA preemption principles it articulates do not apply broadly in other contexts, including state-law-based wage and hour claims. We therefore reject petitioners' argument that *Concepcion* does not apply to require individual arbitration, as per the long-form arbitration agreements, of their NRS Chapter 608 and other state-law claims.

Nor are petitioners correct that the FAA only applies to cases litigated in federal court. By its terms, the Federal Arbitration Act governs the enforceability of "a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2 (2013). So long as "commerce" is involved, the FAA applies. "[T]hough state laws affecting arbitration can supplement the FAA in areas not addressed by federal law," 1 Thomas H. Oehmke, *supra*, § 3:16, at 41 (2015 Supp.), when the FAA applies, it preempts contrary state law whether the preemption issue arises in state or federal court. *Marmet Health Care Center, Inc. v. Brown*, 565 U.S. __, __, 132 S. Ct. 1201, 1203 (2012). The Supreme Court has made it unmistakably clear that state courts "must abide by the FAA, which is 'the supreme Law of the Land,'

U.S. Const. art. VI, cl. 2, and by the opinions of [the Supreme] Court interpreting that law." *Nitro-Lift Techs., LLC v. Howard*, 568 U.S. __, __, 133 S. Ct. 500, 503 (2012).

Petitioners' employment by CPS involves commerce. Indeed, the long-form arbitration agreements so stipulate. Thus, the FAA applies. *Concepcion* teaches that the FAA protects class waivers in arbitration agreements, even when requiring individual arbitration hampers effective vindication of statutory claims. *See also Am. Express Co. v. Italian Colors Rest.*, 570 U.S. __, __, 133 S. Ct. 2304, 2310 (2013) (upholding class arbitration waiver under the FAA against the argument that doing so will prevent vindication of small-dollar antitrust claims, thereby thwarting the policies of the federal antitrust laws and noting, "[t]he class-action waiver merely limits arbitration to the two contracting parties. It no more eliminates those parties' right to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief in 1938." (internal citations omitted)).

NRS 608.018 and NRS 608.250 afford Nevada employees the right to overtime and minimum wage for work performed. So vital is the right to a minimum wage that it is secured by the Nevada Constitution. Nev. Const. art. 15, § 16.[3] But the importance of a right does not entitle a

---

[3]Petitioners argue that class actions are a "remedy" protected by Article 15, Section 16B of the Nevada Constitution, which guarantees minimum wage and "all remedies available under the law or in equity appropriate to remedy any violation" of the minimum wage law, "including but not limited to back pay, damages, reinstatement or injunctive relief." As the list of remedies suggests, a class action is a procedural device, not a remedy. *See D.R. Horton v. NLRB*, 737 F.3d 344, 357 (5th Cir. 2013) ("[t]he use of class action procedures . . . is not a substantive right" or remedy; a class action is a procedural device). While a person's right to

*continued on next page . . .*



litigant to arbitrate on a class basis when he has agreed to arbitrate his statutory claims on an individual basis. *Concepcion*, 563 U.S. at ___, 131 S. Ct. at 1753 ("States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons."). *Concepcion* does not permit a state court to invalidate a class arbitration waiver in a transaction involving commerce on the basis that individual arbitration hampers effective vindication of an employee's state-law-based overtime and minimum wage claims.

## B.

Petitioners next contend that the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* (2014), invalidates the class action waiver in the long-form arbitration agreement and that, as the more specific and more recent law, the NLRA overcomes the FAA and its pro-arbitration provisions. Section 7 of the NLRA grants covered employees certain substantive rights, including the right "to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8(a)(1) of the NLRA makes it illegal for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" by § 7. *Id.* § 158(a)(1). Petitioners cite as support for their argument the decision of the National Labor Relations Board (NLRB) in *In re D.R. Horton, Inc.*, 357 N.L.R.B. No. 184, 2012 WL 36274, *1 (Jan. 3, 2012) (*Horton I*), *enforcement denied in*

---

*. . . continued*

minimum wage is unwaivable, Nev. Const. art. 15, § 16, he may validly enter into an arbitration agreement that sets "not only the situs of suit but also the procedure to be used in resolving" it. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974).

0) 1947A

*part by D.R. Horton, Inc. v. NLRB*, 737 F.3d 344 (5th Cir. 2013), holding that it is unlawful under § 8 of the NLRA for employers to require that employees agree to arbitrate all employment-related claims on an individual basis, thereby giving up their right under § 7 to access class or collective procedures in judicial or arbitral forums for their "mutual aid or protection." *Accord Murphy Oil USA, Inc.*, 361 N.L.R.B. No. 72, 2014 WL 5465454 (Oct. 28, 2014). In the NLRB's view, this rule does not conflict with the FAA because the FAA does not require enforcement of illegal contracts and because § 7 of the NLRA amounts to a "contrary congressional command" overriding the FAA. *Id.* at *12 (quoting *CompuCredit Corp. v. Greenwood*, 565 U.S. ___, 132 S. Ct. 665, 668-69 (2012)).[4]

D.R. Horton filed a petition for review of the NLRB's decision, and the Board cross-applied for enforcement of its order. On review, the United States Court of Appeals for the Fifth Circuit disagreed with the NLRB and overruled *Horton I* to the extent it invalidated the class arbitration waiver as illegal. *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 359-61 (5th Cir. 2013) (*Horton II*). Relying on *Concepcion*, the Fifth Circuit concluded that the Board's decision in *Horton I* effectively prohibits class action waivers, whether in an arbitral or judicial forum, and therefore constitutes "an actual impediment to arbitration [that]

---

[4]Petitioners filed charges against CPS before the NLRB and submitted to this court as a supplemental authority a copy of an administrative law judge's decision that, under *Horton I*, the class action waiver in the long-form arbitration agreement is illegal. CPS filed exceptions to the administrative law judge's decision. The NLRB has yet to resolve the exceptions or seek enforcement of the ALJ's decision.

violates the FAA." *Horton II*, 737 F.3d at 359-60. The Fifth Circuit then considered whether "the FAA's mandate" to enforce arbitration agreements as written "has been 'overridden by a contrary congressional command,'" *id.* (quoting *CompuCredit*, 565 U.S. ___, 132 S. Ct. at 669), and concluded that "[n]either the NLRA's statutory text nor its legislative history contains a congressional command against application of the FAA," *id.* at 361. Finally, the Fifth Circuit concluded that there is no inherent conflict between the FAA and the NLRA and that, indeed, the "courts repeatedly have understood the NLRA to permit and require arbitration." *Id.*

*Iskanian* considered *Horton I* and *Horton II* in detail and concluded, as we do, that *Horton I*'s invalidation of class arbitration waivers cannot be reconciled with the FAA as authoritatively interpreted by the Supreme Court in *Concepcion* and *Italian Colors*. *Iskanian*, 327 P.3d at 141-42. In light of the FAA's "liberal federal policy favoring arbitration," *Concepcion*, 563 U.S. at ___, 131 S. Ct. at 1745, §§ 7 and 8 of the NLRA cannot fairly be taken as a "contrary congressional command" sufficient under *CompuCredit*, 565 U.S. at ___, 132 S. Ct. at 669, to override the FAA. Our conclusion in this regard is consistent with *Horton II*, *Iskanian*, and with "the judgment of all the federal circuit courts and most of the federal district courts that have considered the issue." *Iskanian*, 327 P.3d at 142 (citing *Sutherland v. Ernst & Young, LLP*, 726 F.3d 290, 297 n.8 (2d Cir. 2013), *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1053-55 (8th Cir. 2013), and *Delock v. Securitas Sec. Servs. USA, Inc.*, 883 F. Supp. 2d 784, 789-90 (E.D. Ark. 2012)); *see also Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1075 n.3 (9th Cir. 2013) (similarly collecting cases that "have determined that they should not defer to the NLRB's

decision in *D.R. Horton* on the ground that it conflicts with the explicit pronouncements of the Supreme Court concerning the policies undergirding the Federal Arbitration Act").

V.

As to Tallman, a final issue of waiver remains. Petitioner Tallman sued separately from petitioners Mika and Harter and included in his complaint both class claims under NRS Chapter 608 and collective claims under the FLSA, 29 U.S.C. § 216(b) (2014). CPS removed Tallman's action to federal court based on the FLSA claims. The federal court thereafter severed the FLSA from the state-law claims and remanded the latter to state court. In its answer and in its exchanges with Tallman, CPS demanded individual arbitration of Tallman's state-law claims. But it did not formally move to compel arbitration of them until those claims were remanded to state court. Tallman argues that CPS waived its right to compel arbitration by removing the action and thereafter litigating Tallman's collective FLSA claims in federal court. Of note, both Tallman and CPS assume that waiver was for the court, not the arbitrator to decide.

Waiver of a contractual right to arbitration is not "lightly inferred." *Clark Cnty. v. Blanchard Const. Co.*, 98 Nev. 488, 491, 653 P.2d 1217, 1219 (1982). The party opposing arbitration must demonstrate that "the party seeking to arbitrate (1) knew of his right to arbitrate, (2) acted inconsistently with that right, and (3) prejudiced the other party by his inconsistent acts." *Nevada Gold & Casinos, Inc. v. Am. Heritage, Inc.*, 121 Nev. 84, 90, 110 P.3d 481, 485 (2005). Prejudice to the party opposing arbitration is the "primary focus in determining whether arbitration has been waived." *Id.* "Prejudice may be shown (1) when the parties use discovery not available in arbitration, (2) when they litigate substantial

SUPREME COURT
OF
NEVADA

(O) 1947A

20

issues on the merits, or (3) when compelling arbitration would require a duplication of efforts." *Id.* at 90-91, 110 P.3d at 485.

The district court rejected Tallman's waiver argument. While CPS knew of its right to arbitrate, the district court found that it did not act inconsistently with that right by removing the case to federal court, or prejudice Tallman by its activities in federal court. "Waiver is generally a question of fact[, b]ut when the determination rests on the legal implications of essentially uncontested facts, then it may be determined as a matter of law." *Id.* at 89, 110 P.3d at 484 (internal citation omitted).

The record does not permit us to rule as a matter of law that CPS waived its right to compel arbitration of Tallman's state-law claims, much less to say that the district court acted arbitrarily or capriciously in rejecting the waiver claim. The federal district court's order declining supplemental jurisdiction and remanding Tallman's state-law claims to state court authoritatively recites the history of proceedings in federal court. It emphasizes, as the state district court did in finding no waiver, that discovery had been stayed for a period of time to enable the parties to pursue mediation. *Cf. Dickinson v. Heinold Sec., Inc.*, 661 F.2d 638, 641 (7th Cir. 1981) (rejecting the argument that pursing settlement waives arbitration in dispute involving both arbitrable and nonarbitrable claims). In holding that Tallman's state-law claims substantially predominate over their FLSA claims, justifying rejection of supplemental jurisdiction over them, severance, and remand, the federal district court gave no indication that it considered or addressed the state claims or class certification on the merits. Indeed, the parties stipulated not to conduct discovery on potential class members' damages until class certification was resolved. This does not appear to be a case in which the party seeking arbitration

"'test[ed] the judicial waters'" before moving to compel arbitration. *Id.* at 91, 110 P.3d at 485 (quoting *Uwaydah v. Van Wert Cnty. Hosp.*, 246 F. Supp. 2d 808, 814 (N.D. Ohio 2002)).

Both sides appear to have assumed that the collective action waiver in the long-form arbitration agreement could not be enforced as to Tallman's FLSA claims and/or that there is an inherent inconsistency in pursuing collective FLSA claims and class state-law claims in the same federal district court suit. *See* Mikel J. Sporer, *In and Out: Reconciling 'Inherently Incompatible' Group Action Procedures Under FLSA and Rule 23*, 28 ABA J. Lab. & Emp. L. 367 (2013). Recent cases cast doubt on both assumptions. *See Cohen v. UBS Fin. Servs., Inc.*, ___ F.3d ___, ___, 2015 WL 3953348 (2d Cir. 2015); *Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 973-74 (7th Cir. 2011). But given the state of flux in the law on these issues, it is fair to credit the parties' assumptions that the collective action waiver could not be enforced as to Tallman's FLSA claims, and that those claims could not be litigated simultaneously with his state-law-based class action claims in federal court.

A defendant does not automatically waive his right to compel arbitration by removing an action from state to federal court, *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008), and "[w]here issues in litigation are separate and distinct from arbitrable controversies, no waiver . . . occurs." 3 Thomas H. Oehmke, *supra*, § 50:35, at 50-58; *see Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 463 (2d Cir. 1985). From the limited excerpts of record we have, it appears that the federal court proceedings did not prejudice but may actually have facilitated eventual arbitration of Tallman's state-law claims. His argument that denial of class arbitration prejudices unnamed

Supreme Court
OF
Nevada

0) 1947A

potential class members may be true but follows from *Concepcion*, not CPS's delay in moving to compel arbitration. *See also Iskanian*, 327 P.3d at 143-44 (refusing to find waiver of the right to compel individual arbitration where, as here, the motion to compel arbitration was filed shortly after *Concepcion* abrogated *Discover Bank* and, by extension, *Gentry*).

For these reasons, we conclude that writ relief is inappropriate and therefore deny the petitions for extraordinary writ relief in these cases.

_____, J.
Pickering

We concur:

_____, C.J.
Hardesty

_____, J.
Douglas

_____, J.
Saitta

_____, J.
Parraguirre

_____, J.
Cherry

_____, J.
Gibbons