**FIDELITY NATIONAL CORPORATION, D/B/A REPUBLIC FINANCE, INC. Plaintiff**

**v.**

**Naomi Arthea BLAKELY Defendant**

**No. CIV. 4:02CV531LN.**

United States District Court,
S.D. Mississippi,
Eastern Division.

Aug. 7, 2003.

Robert T. Gordon, Jr., Mitchell, McNutt & Sams, PA, Flowood, G. Daniel Evans, The Evans Law Firm, P.C., Birmingham, AL, for Plaintiff or Petitioner.

William M. Cunningham, Jr., Burns, Cunningham, Mackey & Fillingim, PC, Mobile, AL, for Defendant or Respondent.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiff Republic Finance L.L.C. (Republic)[1] to compel arbitration of a counterclaim asserted against plaintiff in a state court proceeding and to stay the state court's adjudication of those claims pending the resolution of arbitration. Defendant Naomi Arthea Blakely has responded in opposition to the motion and the court, having considered the memoranda and attachments submitted by the parties, concludes that the motion is well taken and should be granted.

Following Blakely's default on a promissory note executed in connection with a loan from Republic, Republic filed suit in state court to recover the outstanding balance on the note. Blakely answered the state court complaint, and counterclaimed against Republic for alleged breach of fiduciary duty, fraudulent and negligent misrepresentation, negligence, unconscionability and unjust enrichment in connection with the loan transaction, based on allegations that Republic improperly included credit insurance on her loan. In response to Blakely's counterclaim, Republic filed this suit to compel arbitration, and has now moved to compel arbitration of Blakely's counterclaim. In response, Blakely argues that (1) Republic waived any right it had to compel arbitration by invoking judicial process against defendant in state court; (2) the arbitration agreement lacks mutuality in that the agreement allows Republic to utilize state court remedies while denying defendant the same; and (3) the arbitration agreement is procedurally and substantively unconscionable.

Section 2 of the Federal Arbitration Act (FAA), 9 U.S.C. § 2, provides that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Additionally, section 4 of the FAA, 9 U.S.C. § 4, gives the court the authority to compel arbitration when a party has ne-

---

1. Effective December 31, 2002, Fidelity National Corporation d/b/a Republic Finance, Inc. (Fidelity) merged into Republic Finance L.L.C. (Republic).

glected, failed or refused to comply with an arbitration agreement.

When deciding whether to grant a motion to compel arbitration under the FFA, courts generally conduct a two-step inquiry. *Primerica Life Ins. Co. v. Brown,* 304 F.3d 469, 471 (5th Cir.2002). First, the court must ascertain whether the parties agreed to arbitrate their dispute.[2] *Primerica Life Ins. Co.,* 304 F.3d at 471; *R.M. Perez & Assoc., Inc. v. Welch,* 960 F.2d 534, 538 (5th Cir.1992). Next, the court must determine "whether legal constraints external to the parties' agreement foreclose the arbitration of those claims." *See Primerica Life Ins. Co.,* 304 F.3d at 471; *Webb v. Investacorp, Inc.,* 89 F.3d 252, 257–58 (5th Cir.1996).

In the case *sub judice,* Blakely does not dispute that she executed a written arbitration agreement in connection with her loan transaction.[3] She claims, though, that the agreement is ambiguous, and hence unenforceable, because of alleged internal conflicts within its provisions. Specifically, she claims the agreement is ambiguous and "confusing" because the agreement purports to require both parties to submit disputes to arbitration while, at the same time, allowing Republic to bring a collection action in state court. The court finds her argument to be without merit.

■ The agreement plainly requires all disputes arising from or related to the parties' transaction to be submitted to binding arbitration, with the exception of specifically "excluded remedies," which are set forth in section two of the agreement, as follows:

> 2. Excluded Remedies: Notwithstanding the above: (a) you and Lender can file a lawsuit in Justice Court; however, if any Claim is added to the lawsuit that exceeds the Justice Court jurisdictional limit, all Claims in the lawsuit must be arbitrated; and (b) *if you default on your loan, Lender may file a collection or foreclosure lawsuit, but you can demand arbitration of those Claims, and Lender can demand arbitration of any Claim you assert in that lawsuit. Using these excluded remedies will not waive this Agreement.*

(Emphasis added). Moreover, even if the agreement were arguably ambiguous, the

---

**2.** As noted by the Fifth Circuit in *Webb v. Investacorp, Inc.,* 89 F.3d 252, 258 (5th Cir. 1996), "this determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that agreement." *See also American Security Ins. Co. v. Magee,* Civ. Act. No. 3:01CV651LN, at *3 n.4 (S.D.Miss. May 9, 2002) (citing *Daisy Mfg. Co. v. NCR Corp.,* 29 F.3d 389, 392 (8th Cir.1994)).

**3.** The arbitration agreement which Blakely executed states, in pertinent part, as follows:

> 1. Agreement to Arbitrate. You and Lender agree that, as part of and as consideration for your loan, any claim, dispute or controversy, whether in contract, tort or otherwise ("Claims" or "Claim"), arising from or related to any of the following shall be resolved by binding arbitration: your loan ...; any past or future transactions or loans between you and Lender; the applications, advertisements, oral or written statements, terms, collateral goods or services financed and/or insurance related to your loan or any past or future transactions or loans; the relationships which result from your loan and any past or future transactions or loans (including relationships with third parties who are not signatories to your loan or this Agreement; Lender's supervision and/or training of employees and agents; and/or the existence, applicability or scope of this agreement (the "Agreement")). Under this Agreement, the parties give up the right to a trial in court with or without a jury. The arbitrators decision [sic] cannot be appealed and is subject to only a limited judicial review. Cross claims and all counterclaims to any Claim must also be arbitrated.

question whether Blakely's counterclaim comes under the terms of the agreement would be a matter for the arbitrator to decide because the terms of the arbitration agreement itself grant to the arbitrator the power to decide issues relating to "the . . . applicability or scope of this agreement."[4] Accordingly, the court concludes that the parties agreed to arbitrate this dispute.

The court must thus determine whether any external legal constraints relieve Blakely of her agreement to arbitrate. In this vein, Blakely contends there are, asserting lack of mutuality, substantive and procedural unconscionability and/or waiver by Republic foreclose the relief sought by Republic The court, however, is unpersuaded by her arguments.

■ Regarding waiver, Blakely asserts that Republic has waived its right to insist on arbitration of Blakey's counterclaim by virtue of its having invoked the state court judicial process to collect the unpaid portion of Blakely's debt. Although the right to arbitrate, like any contractual right, may be waived, *see Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1158 (5th Cir.1986), there is a strong presumption against the waiver of arbitration, *Subway Equipt. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir.1999), and the party seeking to demonstrate waiver of arbitration bears a heavy burden, *Price*,

791 F.2d at 1158. Here, particularly in light of the express provision of the agreement that Republic's use of "excluded remedies" such as state court collection proceedings *would not* operate as a waiver of Republic's right to demand arbitration, the court cannot conclude that Blakely has sustained her burden.

Even in the absence of such a provision, the court would find no waiver. The cases in this circuit finding waiver of arbitration rights have only done so on the premise that "the party seeking arbitration [had waived its right to demand arbitration by] substantially invok[ing] the judicial process to the detriment or prejudice of the other party." *See id.* ("Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party."); *Williams v. Cigna Financial Advisors, Inc.*, 56 F.3d 656, 661 (5th Cir.1995) (same). However, the Fifth Circuit has held that a party only invokes the judicial process where it litigates a specific claim it subsequently seeks to arbitrate, *Subway Equipt. Leasing Corp.*, 169 F.3d at 328, and here, Republic has never attempted to litigate the subject of Blakely's counterclaim. Instead, upon service of the counterclaim, it immediately filed its complaint to compel arbitration. Accordingly, there was no waiver.[5]

---

**4.** Even if it did not do so explicitly, the scope of the arbitration agreement is obviously broad, extending to "any claim, dispute or controversy;" and thus would permit the arbitrator to decide whether the subject dispute is covered. *See Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754–55 (5th Cir. 1993) (noting distinction between broad and specific arbitration agreements and pointing out that "arbitration clauses containing the 'any dispute' language . . . are of the broad type . . . If the clause is broad, the action should be stayed and the arbitrators permitted to decide whether the dispute falls within the clause."); *see also Harvey v. Joyce*, 199

F.3d 790, 793 (5th Cir.2000) (finding that any doubt concerning the scope of an arbitration clause must be resolved in favor of coverage).

**5.** Even had Republic substantially invoked the judicial process, Blakely has failed to demonstrate she was prejudiced as a result. *Subway Equipt. Leasing Corp*, 169 F.3d at 328 ("[P]rejudice . . . refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.").

■ Blakely next claims that the arbitration agreement is substantively and/or procedurally unconscionable, rendering it unenforceable. As to the former contention, Blakely argues that because the agreement lacks mutuality, purporting, as it does, to allow Republic to file a lawsuit without affording Blakely the same right, it is substantively unconscionable. However, not only does this agreement not lack mutuality,[6] but the contention that a lack of mutuality will operate to relieve a party of her agreement to arbitrate has been rejected on several occasions, *see Murphy v. Amsouth Bank*, 2003 WL 21511853, at *3 (S.D.Miss.2003) (holding that arbitration agreement which allowed lender to pursue collection remedies in state court while denying the same to the plaintiff did not lack mutuality so as to make it substantively unconscionable); *First Family Financial Servs., Inc. v. Fairley*, 173 F.Supp.2d 565, 572 (S.D.Miss.2001) (holding that "mutuality of obligation is not required for a contract to be enforceable" and an "arbitration clause is not unenforceable solely because it is one-sided."), and has no more merit now than it did then.

Neither was the agreement to arbitrate procedurally unconscionable. While an agreement to arbitrate is not inherently unconscionable, *see Smith v. EquiFirst Corp.*, 117 F.Supp.2d 557, 564 (S.D.Miss. 2000) (noting that "there is nothing inher-ently unfair or oppressive about arbitration clauses"), a "plaintiff may prove procedural unconscionability if she proves 'a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms,'" *id.* (quoting *Pridgen v. Green Tree Financial Servicing Corp.*, 88 F.Supp.2d 655, 658 (S.D.Miss.2000)).

■ Here, Blakely argues that her "weak" bargaining position in comparison to that of Republic's and the fact that the loan agreement existing between the parties was a form document, the terms of which were not negotiated, require a finding that the arbitration agreement was procedurally unconscionable. Blakely, however, has submitted no evidence on her claim of disparity in sophistication and/or bargaining power, and it is clear to the court that the arbitration agreement signed by Blakely was easily readable and understandable.[7] *See Fairley*, 173 F.Supp.2d at 570 (a contracting party has a legal duty to read a contract before signing it). Furthermore, Blakely does not even attempt to argue the arbitration agreement itself was buried in fine print, that she lacked the ability to read the agreement, or that any behavior of plaintiff or defendant herself prevented her

---

**6.** The arbitration agreement specifically allows either party to file a lawsuit in justice court for claims within the justice court's jurisdiction. And, while it permits Republic to file suit in circuit court for the limited purpose of collection or foreclosure of the debt without giving Blakely the right to bring any action in circuit court, under the terms of the arbitration agreement it was within Blakely's power to demand arbitration of a collection suit brought by Republic.

**7.** In addition to the clearly written language of the arbitration agreement detailed in note 3, *supra*, the top of the agreement, which Blakely executed, warned:

ARBITRATION AGREEMENT
READ this agreement carefully
It provides that all disputes between you and the Lender will be resolved by MANDATORY BINDING ARBITRATION. You thus GIVE UP YOUR RIGHT TO GO TO COURT to assert or defend your rights ... CONSULT A LAWYER if you do not understand this agreement.

from reading and/or comprehending the agreement to arbitrate. And while the record does indicate that Blakely needed the loan to repair her car, no evidence before the court suggests that Blakely was under such "timing or other pressures" that she was not free to visit another lender for more favorable terms. *See id.* Accordingly, defendant's substantive and procedural unconscionability claims are without merit.

In light of the foregoing, the court is satisfied that Blakely agreed to arbitrate her counterclaim and that there is no extrinsic consideration making the agreement unenforceable. As such, the motion to compel arbitration must be granted. Moreover, pursuant to 9 U.S.C. § 3, this court concludes that Blakely's counterclaim in the state court case should be stayed pending the outcome of arbitration proceedings.[8]

Accordingly, it is ordered that plaintiff's motion to compel arbitration and to stay the state court's judicial proceedings relating to defendant's counter-claim is granted.

---

8. Section 3 of the FAA, 9 U.S.C. § 3, provides for a stay of legal proceedings whenever the issues in a case are within the reach of an arbitration agreement. *Midwest Mechanical Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 751 (5th Cir.1986). This provision is mandatory: "If the issues in a case are within the reach of the agreement, the district court has no discretion under section 3 to deny the stay." *Id.* In addition, the Anti–Injunction Act, 28 U.S.C. § 1332, provides that "[a] court of the United States may not ... stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." In the particular circumstances of this case, a stay of the state court's adjudication of defendant's counterclaim is required to protect and effectuate this court's judgment and order that defendant's counterclaim be submitted to binding arbitration. *See Bank One, N.A. v. Williams*, 2002 WL 1013161, at *5 (N.D.Miss.2002) (finding that principles of judicial economy, the strong judicial policy favoring arbitration expressed by the Supreme Court, the plain language of the Anti–Injunction Act and the policies embodied in the FAA warrant a stay of the underlying state court action.)