NEVADA GOLD & CASINOS, INC., A CORPORATION; AND ROUTE 66 CASINOS, LLC, A LIMITED LIABILITY COMPANY, APPELLANTS, *v.* AMERICAN HERITAGE, INC., DBA THE GILLMANN GROUP, A CORPORATION; AND FRED GILLMANN, AN INDIVIDUAL, RESPONDENTS.

No. 40757

April 28, 2005                                    110 P.3d 481

*Lionel Sawyer & Collins* and *Rodney M. Jean,* Las Vegas; *J. Mark Brewer,* Houston, Texas, for Appellants.

*Lemons Grundy & Eisenberg* and *Robert L. Eisenberg,* Reno; *Schreck Brignone Godfrey* and *Todd L. Bice* and *Rebecca S. Levine,* Las Vegas, for Respondents.

Before ROSE, GIBBONS and HARDESTY, JJ.

## OPINION

*Per Curiam:*

In this appeal from a district court order denying appellants' motion to compel arbitration, we consider whether appellants have waived any right to demand arbitration by vigorously litigating the dispute in a Texas court. Applying an analytical framework crafted by the Eighth Circuit Court of Appeals, we conclude that appellants, knowing of their arbitration right, have acted inconsistently with an intent to arbitrate, and that they have thereby prejudiced respondents. We determine that appellants have waived arbitration, and so we grant respondents' motion to dismiss this appeal.

### FACTS

Appellant Nevada Gold & Casinos, Inc., (Nevada Gold) develops gaming properties and has real estate interests in several states. Respondent American Heritage, Inc., has business arrangements with Native American tribes to open and operate casinos on tribal land. American Heritage's principal is respondent Fred Gillmann. Nevada Gold and American Heritage own, respectively, 51% and 49% of appellant Route 66 Casinos, LLC (Route 66), a limited liability company that was organized to operate a casino on tribal land in New Mexico.

The specifics concerning Route 66's formation are disputed. According to appellants, American Heritage was to run the casino

and was to assign its rights under its agreement with the tribe to Route 66. Nevada Gold was to obtain financing of $8 million initially, for the temporary facility, and later was to obtain financing of $40 million for a permanent facility. All receipts from the casino were to be placed in a Route 66 account. Appellants claim that these core obligations were memorialized in an April 2002 letter agreement, and that the arrangement was then finalized in a June 3, 2002 operating agreement for Route 66. The temporary casino opened on June 1, 2002. Appellants claim that shortly after the agreement was signed, Gillmann, acting for American Heritage, stopped returning calls, and eventually maintained that he was defrauded into signing the agreement, and that it contained terms to which he did not agree. Appellants assert that in actuality, the tribe agreed to provide financing, and so Gillmann wanted to withdraw from the agreement so that he would not be obliged to share the casino's proceeds with appellants in exchange for appellants' financing of the project.

Respondents dispute several key points. According to them, American Heritage had an arrangement with the Pueblo of Laguna Tribe in New Mexico (Laguna) to open and operate the casino. Gillmann, on behalf of American Heritage, began negotiations with Nevada Gold to finance the casino and asserts that Nevada Gold represented that it could provide the $8 million initial financing itself. In the course of negotiations, a draft operating agreement was prepared by Nevada Gold. According to Gillmann, he believed that certain terms in the agreement were incorrect but signed the draft at the urging of Thomas Winn, Nevada Gold's president, on the understanding that the agreement could later be amended to reflect the corrections Gillmann wanted. Later, he found that the ''draft'' operating agreement had been filed with the Nevada Secretary of State to establish Route 66 as a Nevada LLC. According to Gillmann, Nevada Gold refused to make the changes he wanted. Gillmann claims that the agreement is therefore not enforceable, and that Route 66 must be dissolved.

The operating agreement contains a dispute resolution provision, which provides for mediation of any disputes under the agreement. If mediation is unsuccessful, then the agreement calls for binding arbitration.

By September 2002, Gillmann had ceased responding to Nevada Gold's inquiries. On September 27, 2002, Nevada Gold demanded arbitration, without first attempting mediation. It sent a copy of the demand to Laguna. On October 2, 2002, Nevada Gold filed a complaint in Harris County, Texas, to collect on a promissory note executed by American Heritage and guaranteed by Gillmann, but it did not immediately serve the complaint. The note and guar-

anty, which do not contain arbitration provisions, are apparently related to the Route 66 agreement. On October 4, 2002, American Heritage and Gillman filed a complaint in Nevada district court, seeking rescission of the agreement and/or a declaration that it was void, dissolution of Route 66, and damages for defamation and interference with American Heritage's relationship with Laguna.

Nevada Gold then moved the Nevada district court to compel arbitration and to stay the Nevada litigation. American Heritage opposed the motion, arguing that a claim for dissolution could not be the subject of arbitration, that it had never agreed to the operating agreement's terms and was fraudulently induced into signing the draft agreement, and that Gillman could not be bound by the arbitration clause because he had signed solely in his representative capacity. The district court denied the motion. As permitted under NRS 38.247, Nevada Gold appealed from the district court's order.

After the district court denied its stay motion, Nevada Gold moved this court for a stay on March 31, 2003. On April 10, 2003, Nevada Gold and Route 66 amended their Texas complaint to include additional claims, including several based on American Heritage's alleged breach of the operating agreement. This court granted Nevada Gold's motion for a stay pending appeal on August 19, 2003. Also, as the district court denied American Heritage's motion to stay the arbitration, this court enjoined Nevada Gold from proceeding with the arbitration on September 26, 2003.

After this court entered its September 26, 2003 order, American Heritage attempted to abate the Texas proceedings pending this court's ruling; the Texas court denied the motion. The parties then continued to vigorously litigate the Texas case. They engaged in discovery, including depositions and written discovery, and Nevada Gold filed at least one motion to compel discovery. Trial had originally been set for late October 2003, but was continued, over Nevada Gold's objection, to February 2004.

According to American Heritage's Texas counsel, several pretrial motions were heard during the weeks before trial, including motions in limine. Counsel avers that the Texas court made several rulings adverse to Nevada Gold. Nevada Gold does not dispute the substance of counsel's affidavit. Following the adverse rulings, Nevada Gold moved to compel arbitration. American Heritage opposed the motion, arguing that Nevada Gold had waived any right to arbitrate by participating in the Texas litigation. The Texas court took the matter under submission, and then entered a minute order abating the Texas proceedings pending this court's disposition of the appeal.

After the Texas court abated the Texas proceedings, American Heritage filed a motion to dismiss this appeal, contending that Nevada Gold had waived its right to appeal because it had waived

any right to arbitrate. Nevada Gold opposes the motion, arguing that it has always demonstrated an intent to arbitrate and that American Heritage has not shown sufficient prejudice for a waiver.

## DISCUSSION

Appellants first argue that this court cannot consider matters outside the record on appeal, and thus the issue of waiver is not properly before us. In support, appellants rely on *Carson Ready Mix v. First National Bank.*[1] While *Carson Ready Mix* recites the general rule, it is not without exception. In particular, we may consider relevant facts outside the record in determining whether appellants have waived their appeal.[2]

Next, because the motion to dismiss the appeal was filed in this court in the first instance, we have no district court factual findings to review on the issue of waiver. Waiver is generally a question of fact.[3] But when the determination rests on the legal implications of essentially uncontested facts, then it may be determined as a matter of law.[4]

Here, the pertinent facts are not contested. Nevada Gold does not dispute that it engaged in litigation in Texas, and American Heritage does not dispute that Nevada Gold initially sought arbitration. Also, American Heritage has alleged prejudice in the form of litigation expenses and disclosure of its strategy. While Nevada Gold disputes the significance of American Heritage's claimed prejudice, it does not dispute that American Heritage incurred costs and necessarily disclosed some of its strategies in the Texas litigation. Factual determinations are thus unnecessary to resolve the waiver issue. As noted by the Fifth Circuit:

> As it comes before this court, this case presents few, if any, important factual disputes. . . .
>
> . . . Of course, the parties are in disagreement as to the legal implications that should be drawn from the facts. But in

---

[1]97 Nev. 474, 635 P.2d 276 (1981).

[2]*See Rosen v. Rae,* 647 P.2d 640 (Ariz. Ct. App. 1982) (determining that appellate court may receive evidence outside the record to establish whether appellant waived right to appeal); *accord Bolen v. Cumby,* 14 S.W. 926 (Ark. 1890); *Ehrman v. Astoria & P. Ry. Co.,* 38 P. 306 (Or. 1894); *Ward v. Charlton,* 12 S.E.2d 791 (Va. 1941).

[3]*See Merrill v. DeMott,* 113 Nev. 1390, 1399, 951 P.2d 1040, 1045-46 (1997).

[4]*See id.*

these circumstances an appellate tribunal has broad authority to substitute its own conclusions of law for those of the trial court.[5]

Respondents argue that appellants have waived their right to demand arbitration by their actions in the related Texas litigation, including: (1) amending their Texas complaint to include claims that they assert are arbitrable, (2) pursuing discovery, (3) seeking a preferential trial setting, and (4) delaying their motion to compel arbitration until the week before trial, after several adverse pretrial rulings. Respondents also maintain that they have suffered prejudice because they have necessarily disclosed some of their strategy in the Texas litigation and because they have incurred significant fees and costs.

Appellants contend that their participation in the Texas case does not rise to the level of waiving their right to arbitrate, because: (1) they initially demanded arbitration, before filing a complaint with the Texas court, (2) they only added the allegedly arbitrable claims to their Texas complaint after the Nevada district court entered the order appealed from here, refusing to compel arbitration, (3) they continued to pursue arbitration until this court's September 26, 2003 stay, and (4) their conduct as a whole evidences an intent to arbitrate. Appellants also argue that respondents cannot show sufficient prejudice to support waiver and that any disadvantage they may have suffered is the result of their own actions in resisting appellants' efforts to arbitrate this case.

We have previously held that the primary focus in determining whether arbitration has been waived is the resulting prejudice to the party opposing arbitration.[6] We take this opportunity to further refine the test for determining when a waiver has been demonstrated and adopt the test set forth in a recent Eighth Circuit case, *Kelly v. Golden*.[7] Under this test, a waiver may be shown when the party seeking to arbitrate (1) knew of his right to arbitrate, (2) acted inconsistently with that right, and (3) prejudiced the other party by his inconsistent acts.[8] Prejudice may be shown (1) when the parties use discovery not available in arbitration,

---

[5]*Miller Brewing Co. v. Fort Worth Distributing Co.,* 781 F.2d 494, 496 (5th Cir. 1986).

[6]*See Int'l Assoc. Firefighters v. City of Las Vegas,* 104 Nev. 615, 764 P.2d 478 (1988); *County of Clark v. Blanchard Constr. Co.,* 98 Nev. 488, 653 P.2d 1217 (1982).

[7]352 F.3d 344 (8th Cir. 2003).

[8]*Id.* at 349.

(2) when they litigate substantial issues on the merits, or (3) when compelling arbitration would require a duplication of efforts.[9]

Here, Nevada Gold initially sought to arbitrate its dispute with American Heritage. But when the Nevada district court denied its motion to compel arbitration, it immediately amended its Texas complaint to add the claims that it previously asserted were arbitrable. Nevada Gold proceeded to vigorously litigate the matter in the Texas court for eighteen months without moving the Texas court to compel arbitration. Only on the eve of trial, and after litigating substantial issues, did Nevada Gold belatedly seek an order from the Texas court compelling arbitration. Consequently, Nevada Gold, knowing of its arbitration right, acted inconsistently with that right and thereby prejudiced American Heritage. Here, American Heritage has shown prejudice because Nevada Gold litigated substantial issues on the merits and because compelling arbitration would require the parties to duplicate their efforts. As an Ohio federal district court aptly observed in *Uwaydah v. Van Wert County Hospital*:[10]

> If plaintiff's demand for arbitration were to be upheld, there would be nothing to keep any litigant with an arbitration clause from testing the judicial waters, and to do so for as long as he liked, even to the point where the case has arrived on the brink of resolution, and then nullifying all that has gone before by demanding arbitration.[11]

We conclude that, as a matter of law, Nevada Gold has waived its right to arbitrate its dispute with American Heritage. Accordingly, we grant respondents' motion and dismiss this appeal.

---

[9]*Id.*

[10]246 F. Supp. 2d 808 (N.D. Ohio 2002).

[11]*Id.* at 814.